**REILLY TAR & CHEMICAL CORPORATION, an Indiana corporation, Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, a Delaware corporation, Defendant.**

**Civ. No. 3–84–124.**

United States District Court,
D. Minnesota,
Third Division.

May 31, 1984.

Michael J. Wahoske, Tracy Van Steenburgh, Edward J. Schwartzbauer, Minneapolis, Minn., for plaintiff.

Barry McGrath, St. Paul, Minn., for defendant.

Steven Shakman, Sp. Asst. Atty. Gen., for State of Minn.

## MEMORANDUM ORDER

MAGNUSON, District Judge.

A hearing was held before the undersigned on February 10, 1984 upon the motion of defendant Burlington Northern Railroad Company for an order dismissing plaintiff's complaint for lack of subject

matter jurisdiction. Fed.R.Civ.P. 12(b)(1). In the alternative, defendant has moved for summary judgment on the following grounds: 1) that plaintiff Reilly Tar is not entitled to the equitable relief sought due to its unlawful trespass on defendant's property; and 2) that the plaintiff has not met the requisite elements entitling them to a bill of discovery in that the information sought by plaintiff is available by means other than entry upon defendant's property. Plaintiff has cross moved for summary judgment. Fed.R.Civ.P. 56.

Plaintiff Reilly Tar and Chemical Corporation filed the above action requesting an equitable bill of discovery to permit its agents to enter upon and inspect certain land of defendant located in St. Louis Park, Minnesota on the ground that the information sought may be directly relevant to its defense of a suit pending before this court, *United States of America and State of Minnesota, et al. v. Reilly Tar and Chemical Corporation*, Civ. No. 4–80–469, (hereinafter "the original action"). In the original action, Reilly Tar is defending against allegations that the company's activities at its coal tar refinery and creosote plant in St. Louis Park, Minnesota contaminated several wells in St. Louis Park. Reilly suspects that one of the wells it is accused of contaminating may have been contaminated by asphalt spills that occurred on neighboring property owned by Burlington Northern at the time this property was leased and occupied by the J.V. Gleason Asphalt Company. On October 27, 1983 Reilly Tar made a written request to Burlington Northern for permission to inspect and take samples from this site. Burlington Northern denied this request indicating that it would reconsider the matter if Reilly Tar agreed to indemnify Burlington Northern for any and all liability which might arise from Reilly's inspection and testing.

Prior to commencing the instant suit, Reilly Tar sought an equitable bill of discovery against Burlington Northern through an Order to Show Cause in the original action, Civ. No. 4–80–469, asserting that the court had ancillary jurisdiction over nonparty Burlington Northern. Bur-lington opposed this original petition on the ground that the court lacked personal and subject matter jurisdiction and that Rule 34(c) of the Federal Rules of Civil Procedure required Reilly to file an independent action to obtain the relief requested. By Order dated December 27, 1983 United States Magistrate Floyd E. Boline summarily dismissed Reilly Tar's Petition for a bill of discovery. In response, Reilly Tar commenced the instant action by serving a summons and complaint upon Burlington Northern.

By letter dated January 17, 1984, the Minnesota Pollution Control Agency sent a formal request to Burlington Northern for information in regard to any wells located on the former Gleason site. The court was informed on April 13, 1984, by Stephen Shakman, Special Assistant Attorney General, Minnesota Pollution Control Agency, that Burlington Northern had not yet responded to the requests for information. The court requested Mr. Shakman to inquire of the MPCA if it planned to obtain water samples from the site or to further investigate into the possibility of the Gleason site being a source of groundwater contamination in St. Louis Park. By letter dated April 24, 1984, Mr. Shakman informed the court that the Site Response Section of the MPCA's Solid and Hazardous Waste Division has concluded that the Gleason site is not a source of the groundwater pollution attributable to Reilly Tar. At this juncture there is a dispute as to whether the Gleason site has only one shallow 100 foot well or whether it also has another well which contains a thick, black substance. Mr. McGrath, counsel for Burlington Northern, represents that the only well located on the property is the 100 foot well. Mr. Schwartzbauer, counsel for Reilly Tar, states that a former Gleason employee located a second well for Reilly's experts which is described as containing a thick, black substance. Burlington contends that Reilly is mistakenly referring to a former truck scales pit which has nothing to do with a well structure. Mr. McGrath informs the court that Burlington is cur-

rently in the process of abandoning the 100 foot well in accordance with the requirements of the Minnesota Department of Health. A water sample has been drawn from this well and is being analyzed separately by the Department of Health and Burlington. Mr. McGrath states that preliminary advice indicates that there are no detectable PAH traces in this well. In view of this, Burlington contends that there is no practical need for Reilly to enter upon its property. Counsel for Reilly Tar indicates that Reilly has no interest in sharing water samples from Burlington Northern's 100 foot clean well. Rather, Reilly seeks permission to explore the second dirty well that it believes exists on the property. The letter from Mr. Schwartzbauer indicates that the requested exploration would involve drilling into this well to see if there is a pathway between the black material in this well and the Prairie du Chien-Jordan aquifer.

The reason Reilly Tar seeks to inspect Burlington Northern's property is to determine if it should implead Burlington or Gleason as a third party in the original action, Civil File No. 4–80–469. (*See* Reilly Tar's Memorandum in Support of Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment at page 5.)

When the court initially heard and considered this motion, it was of the impression that water samples taken from the Burlington site would satisfy Reilly's need for discovery for purposes of this action. The court thought that water samples analyzed by the State of Minnesota could obviate Reilly's needs. It has become apparent through recent correspondence that a much more invasive inspection of the land is sought by Reilly to determine if the second well is in fact a well and in any way connected to the aquifer such as to be a possible source of groundwater contamination.

The Federal Rules of Civil Procedure do not provide for entry upon a non-party's land for purposes of inspection and sampling. Rule 34(c) states:

(c) Persons Not Parties. This rule does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land.

The Advisory Committee Note to the 1970 Amendment to Rule 34 indicates that Rule 34(c) was added in response to comments from the bar that in preparation for trial it is occasionally necessary to inspect non-party land and that some courts had dismissed independent actions in the nature of bills in equity for such discovery as preempted by Rule 34. The Committee Note indicates that the sole purpose of Rule 34(c) is to clarify that independent discovery actions for inspection of a non-party's land and for production of documents and things not provided for by the Federal Rules of Civil Procedure are not preempted by the Rules. The Advisory Committee recognized that the ideal solution would be to provide directly for such discovery against nonparties, but that the jurisdictional and procedural problems in doing so were complex. Notes of Advisory Committee on 1970 Amendment to Rules, Fed.R.Civ.P. 34(c).

■ The parties agree that Rule 34(c) itself does not authorize a court to order discovery of nonparty land and that the availability of such discovery depends on whatever type of independent action may be brought. *Huynh v. Werke*, 90 F.R.D. 447, 450 (S.D.Ohio 1981). The Advisory Committee Note, *supra*, appears to contemplate that an independent action for such discovery could exist in the nature of a bill in equity. Several courts which have addressed Rule 34(c) indicate that the right to such discovery could be found in an independent action in the nature of an equitable bill for discovery. *Huynk v. Werke*, 90 F.R.D. at 450; *Home Insurance Co. v. First National Bank of Rome*, 89 F.R.D. 485 (N.D.Ga.1980). A Superior Court of New Jersey in construing a state statutory rule identical to Rule 34(c) found the right to such relief in an equitable bill for discovery under the general precept that equity may be resorted to where effective dis-

covery could not be maintained under state discovery rules. *Arcell v. Ashland Chemical Co., Inc.*, 152 N.J.Super. 471, 378 A.2d 53, 70–71 (1977). *See also*, Note, "Rule 34(c) and Discovery of Nonparty Land," 85 Yale L.J. 112 (1975) (addressing the types of independent actions which might be maintained to obtain discovery of nonparty land).

The parties' arguments in regard to the motions before the court center upon whether such an independent action for a bill of discovery requires an independent basis of federal jurisdiction. Reilly Tar contends that this court has independent subject matter jurisdiction of this action under 28 U.S.C. § 1332. In the alternative, Reilly Tar asserts that the court has ancillary jurisdiction over the subject matter of this suit and may order the requested discovery as an incident to disposition of the United States action in Civ. No. 4–80–469. Burlington Northern argues that Reilly has failed to demonstrate that the amount in controversy exceeds $10,000 as required by § 1332. Burlington Northern further contends that the term "independent action" in Rule 34(c) precludes exercising ancillary jurisdiction premised upon the court's federal question jurisdiction in Civ. No. 4–80–469. In the alternative, Burlington argues that even if the court has jurisdiction over this suit that Reilly is not entitled to equitable relief due to its trespass and due to the fact that the information it needs is available from the State of Minnesota.

The preliminary issue confronting the court is whether it has subject matter jurisdiction of the instant discovery action.

### Diversity of Citizenship

28 U.S.C. § 1332(a)(1) provides that:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different states.

When subject matter jurisdiction is premised upon diversity of citizenship, the plaintiff bears the burden of proving that the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs. *Massachusetts State Pharmaceutical Association v. Federal Prescription Service, Inc.*, 431 F.2d 130, 132 (8th Cir.1970). The amount in controversy is tested by the value of the suit's intended benefit to the plaintiff. *Id.* Although plaintiff's complaint alleges that the amount in controversy meets the statutory requirement, it is clear that the amount is based solely upon the potential financial benefit to plaintiff in defending in action No. 4–80–469 should the requested discovery reveal that Burlington Northern or Gleason contributed to the contamination in St. Louis Park. However, a court may not look to the collateral effect of a judgment on matters not directly involved in the suit in issue in determining the amount in controversy. *See* 1 Moore's Federal Practice, ¶ 0.91(2).

The plaintiff must establish that the discovery relief which it seeks in the instant action has a value which is ascertainable, measurable and greater than $10,000. The fact that equitable relief may not be capable of exact valuation will not negate federal jurisdiction. *Hedberg v. State Farm Mutual Automobile Insurance Co.*, 350 F.2d 924, 928 (8th Cir.1965). However, if the matter in dispute is incapable of being reduced to a pecuniary standard of value, jurisdiction cannot be predicated upon 28 U.S.C. § 1332. *See Senate Select Committee on Presidential Campaign Activities v. Nixon*, 366 F.Supp. 51, 60 (D.D.C.1973) (regarding the jurisdictional amount formerly required under 28 U.S.C. § 1331); 1 Moore's Federal Practice, ¶ 0.92(5). In the instant action, plaintiff has not demonstrated any method of calculating the monetary benefit of the discovery it seeks apart from its potential collateral impact on Civ. No. 4–80–469. The court cannot find any basis on which to assign a dollar value to the discovery sought in this action except by mere speculation and conjecture as to its impact on Civ. No. 4–80–469. Accordingly, the court finds no independent jurisdictional basis for the instant action under 28 U.S.C. § 1332.

Ancillary Jurisdiction

Rule 34(c) does not purport to state whether an independent basis of federal jurisdiction is required to maintain a discovery action for inspection of a non-party's land. However, the court does not find that the exercise of ancillary jurisdiction is foreclosed simply by use of the term "independent action" in Rule 34(c) "since it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction". *Owen Equipment & Erection Company v. Kroger*, 437 U.S. 365, 370, 98 S.Ct. 2396, 2400, 57 L.Ed.2d 274 (1978).

The court has been unable to fine any caselaw which addresses the issue of whether ancillary jurisdiction may form the basis for the court's power to entertain an action seeking discovery of a nonparty's land. One commentator who briefly addressed this issue presumed that ancillary jurisdiction would exist for a discovery bill running against a nonparty in the same manner that a Rule 27(a) petition to perpetuate testimony, which may run against a nonparty witness, is cognizable in federal court under the principle of ancillary jurisdiction. Note, "Rule 34(c) and Discovery of Nonparty Land," 85 Yale L.J. 112, 117 n. 32 (1975).

The case of *Huynh v. Werke*, 90 F.R.D. 447 (S.D.Ohio 1981) upon which Burlington relies in contending that an independent ground of federal jurisdiction is required to maintain a discovery action against a nonparty did not reach this issue. *Huynh* was a products liability case in which the plaintiff moved the court pursuant to Rule 34(c) for an order to permit entry upon the land of a non-party to inspect the machine which had allegedly caused plaintiff's injuries. The court denied plaintiff's motion on the ground that the Federal Rules of Civil Procedure provided the court with no authority to order a nonparty to permit entry upon land. 90 F.R.D. at 450. Burlington bases its position upon dicta in *Huynh* which states that the plaintiff could pursue an independent action to obtain an equitable bill in discovery "but they must do so in a

court of competent subject matter jurisdiction and with perfected personal jurisdiction over Inland". *Id.* Of course, the requirement of obtaining personal service is not inconsistent with finding the action before the court ancillary to the action in Civ. No. 4–80–469. In general, personal service must be obtained in an action against a person not a party to an original proceeding even though the action is ancillary for purposes of federal jurisdiction. *See* 2 Moore's, *supra*, ¶ 4.13. Burlington Northern does not contend that personal service has not been affected in this action. The court does not find the dicta in *Huynh* in regard to subject matter jurisdiction to be more than a general statement of the fundamental precept that federal courts are courts of limited jurisdiction. This is of course the overriding consideration of a federal court in determining whether it is appropriate to exercise ancillary jurisdiction.

■ The court is of the opinion that ancillary jurisdiction may properly be exercised in a discovery action seeking inspection of a nonparty's land if the facts of a particular case so warrant.

■ Reilly argues that the instant action is "logically dependent" upon the action in Civ. No. 4–80–469 over which the court has federal question jurisdiction in that its right to discovery is dependent upon the original action. Therefore, exercising ancillary jurisdiction over the instant action comports with the test set forth in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 378, 98 S.Ct. 2396, 2405, 57 L.Ed.2d 274 (1978). In *Kroger*, the United States Supreme Court held that there was no authority under the district court's ancillary jurisdiction to entertain plaintiff's state law claim against a non-diverse third-party defendant in an action in which federal jurisdiction was premised upon diversity of citizenship. 437 U.S. at 377, 98 S.Ct. at 2404. The court held that Congress' mandate of complete diversity under 28 U.S.C. § 1332 could not be evaded simply because the plaintiff's claim against the non-diverse third-party defendant and her state law

claim against the diverse defendant met the constitutional minimum of deriving from a "common nucleus of operative fact". 437 U.S. at 371–377, 98 S.Ct. at 2401–2404. The court stated that the context in which a nonfederal claim is asserted "is crucial" in determining whether jurisdiction over such a claim exists, citing to *Aldinger v. Howard*, 427 U.S. 1, 14, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976), 437 at 375–376, 98 S.Ct. at 2403–2404. The court went on to note that the plaintiff's claim against the non-diverse third-party defendant was not ancillary to her claim against the diverse defendant in the sense that a third-party complaint is in its relation to the original complaint. In the latter relation there is "not mere factual similarity but logical dependence." 437 U.S. at 376, 98 S.Ct. at 2404.

The *Kroger* case is not entirely apposite in that it dealt with the court's power to entertain nonfederal claims which were tied to federal claims of parties already under the jurisdiction of the federal court. *Aldinger v. Howard, supra,* is more closely analogous to the instant action. In *Aldinger*, the Supreme Court addressed the issue of when a plaintiff's nonfederal claim could form the basis for joining a party over whom no independent federal jurisdiction exists. This is referred to as pendent party jurisdiction. In *Aldinger*, the court adopted a three-tier analysis. The court must first determine that it has the constitutional power to hear the claim. Under the rationale of *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) the constitutional power to hear a nonfederal claim (one over which there is no independent subject matter jurisdiction) exists if the federal claim is substantial, if the federal claim and the nonfederal claim share a common nucleus of operative facts and if the claims are such that they would ordinarily be expected to be tried in one judicial setting. Secondly, under *Aldinger*, the court must determine whether Congress, in the statutes conferring jurisdiction over the principal claim, has expressly or by implication negated the existence of pendent party

jurisdiction. Lastly, the court must determine whether in its discretion it finds the case suitable for the exercise of pendent party jurisdiction. 427 U.S. at 18, 96 S.Ct. at 2422.

In applying this three-tier analysis, the court in *Aldinger* found that Congressional intent would not permit the exercise of pendent party jurisdiction over the County of Spokane in order to adjudicate plaintiff's state claims against the county in a case in which the principal action was a civil rights action brought under 42 U.S.C. § 1983 with federal jurisdiction premised upon 28 U.S.C. § 1343(3). The court in *Aldinger* appears to recognize, under the rationale of its decision in *United Mine Workers v. Gibbs, supra,* that there were no constitutional impediments to the court's power to exercise jurisdiction over a pendent party. 427 U.S. at 15–17, 96 S.Ct. at 2420–2421. However, in analyzing the language of § 1343(3) together with the scope of § 1983, which the court at that time interpreted to exclude liability against political subdivisions, the court found that Congress did not intend to extend the federal court's jurisdiction over the County of Spokane.

Dicta in *Aldinger* indicates that the Supreme Court is going to be reluctant to extend jurisdiction over claims against parties who are not otherwise subject to the court's jurisdiction. 427 U.S. at 18, 96 S.Ct. at 2422. However, the case does not foreclose such jurisdiction. The court indicates that "other statutory grants and other alignments of parties and claims might call for a different result". 427 U.S. at 18, 96 S.Ct. at 2422. By way of example, the court notes that the argument in favor of exercising pendent party jurisdiction would be stronger when the grant of jurisdiction to the federal court over the principal claim is exclusive. *Id.*

While an action for discovery of a non-party's land presents a situation somewhat different than the usual application of ancillary or pendent party jurisdiction, the court finds that the three-tier analysis of *Aldinger* is appropriate to apply to determine if the court has the power to entertain

Reilly's action for an equitable bill of discovery against Burlington.

In the original action, Reilly is being sued under the Comprehensive Environmental Response Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9606, 9607, § 7003 of Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6973, and state law for soil and groundwater contamination attributed to Reilly Tar's operation of a coal tar refining and wood treating plant in St. Louis Park, Minnesota. Subject matter jurisdiction is premised upon 28 U.S.C. § 1331. Claims under CERCLA are within the exclusive jurisdiction of the federal courts. 42 U.S.C. § 9613(b).

Reilly Tar's need for discovery from Burlington Northern pertains to the same groundwater contamination at issue in the original action. The federal claims are substantial and it would normally be expected that the court would be in charge of all discovery having relevance to the original action. The court finds nothing in CERCLA, RCRA or the court's grant of federal question jurisdiction under 28 U.S.C. § 1331 which either expressly or impliedly indicates Congressional intent that this court not extend jurisdiction over Reilly Tar's discovery action against Burlington Northern.

However, the court does not find that it would be appropriate to order the discovery Reilly seeks for the purpose of determining if Reilly Tar has a cause of action against Burlington or Gleason. While Rule 34(c) makes clear that independent actions for inspection of nonparty land are not preempted as not provided for under the Rules, it seems clear to the court that it should extend its equity powers to entertain such actions only when the Federal Rules fail to provide an adequate remedy. In the instant situation, this requires a balancing of the liberal pleading requirements of Fed.R. Civ.P. 8(a), the verification requirement of Fed.R.Civ.P. 11, and the liberal discovery rules which permit parties to flesh out their claims and defenses once suit is commenced. Reilly has not demonstrated that under these rules, it is unable to frame an adequate third-party complaint against Burlington or Gleason. Reilly is not claiming that it is precluded in law from maintaining a third-party action against Burlington or Gleason but in need of access to Burlington's property to adequately defend itself in the original action. On this basis, the court is going to decline jurisdiction over this action.

Accordingly,

IT IS ORDERED that this action is dismissed.