**In the Matter of the Petition to Enter upon Certain Property by BIO–VITA, LTD. and Hemo–Innovations, Ltd., Petitioners,**

v.

**BIOPURE CORP. and the Upjohn Company, Respondents.**

**Civ. A. No. 90–12688–T.[1]**

United States District Court, D. Massachusetts.

July 17, 1991.

---

1. CA No. 90–12688–T is the docket number in *Bio–Vita, Ltd., et al. v. Rausch, et al.* (the "Principal Action").

**14**

Leila R. Kern, Kern, Sosman, Hagerty, Roach & Carpenter, Boston, Mass., for Hemo–Innovations, Ltd.

S. Elaine McChesney, Randal A. Farrar, Robert A. Buhlman, Bingham, Dana & Gould, Boston, Mass., for Carl W. Rausch and Biopure Corp.

Robert B. Elwood, Leboeuf, Lamb, Leiby & Macray, New York City, S. Elaine McChesney, Randal A. Farrar, Robert A. Buhlman, Bingham, Dana & Gould, Boston, Mass., for Biopure Corp. and Biopure Associates Ltd. Partnership.

Andrew J. McElaney, Jr., Nutter, McClennen & Fish, Boston, Mass., for Upjohn Co.

**2.** BALP is a defendant in the Principal Action.

**3.** The January Agreements consisted of an Investment Agreement, a License Agreement, and a Purchase and Sale Agreement.

**4.** Hemopure is a trade name for purified cattle hemoglobin.

**5.** In its complaint, plaintiff Bio–Vita states that "[o]n or about February 7, 1990, [it] assigned all of its right, title and interest in and to the License Agreement to plaintiff Hemo, to which

## MEMORANDUM

TAURO, District Judge.

## I

## INTRODUCTION

This action arises out of a series of written agreements entered into between petitioner Bio–Vita, Ltd. and respondent Biopure Corporation ("Biopure") and Biopure Associates Limited Partnership ("BALP")[2] on January 29, 1990 (the "January Agreements").[3] The underlying purpose of the January Agreements was to finance and promote the research, development, and marketing of Hemopure, a human blood substitute.[4]

On August 24, 1990, Biopure and BALP rescinded the January Agreements. On November 8, 1990, Bio–Vita filed a six count complaint alleging breach of contract, anticipatory breach, securities law violations, and common law fraud, and seeking specific performance and accounting.

As part of their response to Bio–Vita's complaint, Biopure asserted a five count counterclaim against defendants-in-counterclaim Bio–Vita, Hemo–Innovations, Ltd. ("Hemo"),[5] William P. Trainor ("Trainor"), and Diane M. Trainor ("Ms. Trainor"), alleging violation of Mass.Gen.L. ch. 93A, § 11, common law fraud, and breach of contract, and seeking indemnification and contribution.

On March 12, 1991, this court dismissed Counts II (common law fraud) and V (contribution) of defendants' counterclaim. 759 F.Supp. 33.[6] On April 11, 1991, defen-

Biopure consented under the condition that Bio–Vita remain jointly and severally liable for all obligations of Hemo under the License Agreement." Complaint at ¶ 23. In its answer, defendants "deny that Biopure consented in writing to any assignment by Bio–Vita of its interest in the License Agreement...." Answer at ¶ 23.

**6.** In its Order, this court allowed defendants to amend their counterclaim within thirty days, dismissed Counts II, III, and V of defendants'

dants filed an Amended Counterclaim and Third Party Claim against Trainor, Ms. Trainor, Bio–Vita, Hemo, Balfour Holdings, Inc. ("Balfour"), and Peter Fisher ("Fisher"). Balfour and Fisher are plaintiffs in the related action *Fisher, et al. v. Trainor, et al.*, CA No. 90–11775–T.[7]

On May 23, 1991, Bio–Vita and Hemo filed a Petition to Enter Upon Property. Specifically, petitioners demand that Biopure and The Upjohn Company ("Respondents") authorize petitioners entry upon the property of respondents to "observe, inspect and survey" human clinical testing of Hemopure. Petition at ¶ 27. On June 14, 1991, respondents moved to dismiss the Petition. The Petition presents this court with several interesting legal issues, including the opportunity to take a final look at the "independent action" requirement of Fed.R.Civ.P. 34(c).[8]

## II

## ANALYSIS

### A. *Biopure's Property*

Petitioners seek entry upon the property of both Biopure and Upjohn "to observe, inspect and survey future human clinical trials of Hemopure...." Petition at ¶¶ 23, 24. In December 1990, Upjohn entered into a licensing and testing agreement with Biopure, under which Upjohn agreed to conduct human clinical testing of Hemopure in the United States. *See* Affidavit of Carl W. Rausch at ¶ 4.[9] In his affidavit, Biopure's CEO states that "[n]one of the human testing to be done by The Upjohn Company ... has been or will be conducted on Biopure property (including Biopure's Harrison Avenue facility), nor has Biopure participated in the selection of a site for the Upjohn testing." *Id.* at ¶ 2. As a result, this Memorandum will focus on petitioners' request to enter upon Upjohn's property, as Biopure has agreed not to conduct any human testing on its property.

### B. *Fed.R.Civ.P. 34(c)*

Prior to 1970, Rule 34 applied only to parties. In 1970, the Supreme Court amended Rule 34, adding subdivision (c), which reads, "This rule does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land." This court must first consider whether the instant petition constitutes "an independent action."

Few courts have addressed the question of what constitutes an independent action under Rule 34(c). In an analogous situation, a United States Magistrate dismissed a petition for a bill of discovery for failure to comply with the independent action requirement of Rule 34(c). *See Reilly Tar Corp. v. Burlington Northern R.R. Co.*, 589 F.Supp. 275 (D.Minn.1984). In that case, defendant sought an equitable bill of

Counterclaim against Ms. Trainor, dismissed that part of Count IV of defendants' Counterclaim against Ms. Trainor that sought contractual indemnification, and struck defendants' eleventh and thirteenth affirmative defenses.

7. In the *Fisher* action, plaintiff Fisher alleges that he entered into a joint venture agreement with Bio–Vita for the testing, development and marketing of Hemopure. This agreement provided that Fisher would arrange Hemopure testing in Guatemala and that Bio–Vita would obtain a licensing agreement with, and equity interest in, Biopure. Fisher alleges that Bio–Vita then failed to distribute Biopure stock to him. Fisher also alleges that he had a separate agreement with Biopure entitling him to an equity interest in Biopure and a license to sell Biopure products and that Biopure has failed to grant him either that license or an equity interest. Finally, Fisher alleges that Biopure wrongfully rescinded the January Agreements.

8. Absent Congressional action to the contrary, on December 1, 1991, Fed.R.Civ.P. 34(c) will provide, "A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." The proposed amendment to Rule 45 provides "for subpoenas to compel non-parties to produce documents and things and to submit to inspections of premises." Fed.R.Civ.P. 34 advisory committee's note on proposed rules.

9. After obtaining FDA approval in February 1991, Upjohn began human trials in March 1991. Upjohn stopped testing in April after a volunteer had a minor adverse reaction. The FDA put a "hold" on testing. Upjohn may seek to have the hold lifted after it conducts a series of animal tests and submits the results to the FDA for analysis. *See* Affidavit of Carl W. Rausch at ¶¶ 4–5.

discovery against a nonparty through an Order to Show Cause in the original action. *Id.* at 277. Specifically, defendant requested that the court permit its agents to enter upon and inspect certain land of the nonparty. *Id.* The nonparty objected on the ground that Rule 34(c) required defendant to file an independent action to obtain the relief requested. *Id.* After the Magistrate summarily dismissed its petition, defendant commenced an independent action by serving a summons and complaint upon the former nonparty. *Id.*

▇ The "independent action" requirement of Rule 34(c) must be read in conjunction with Fed.R.Civ.P. 3, which requires the filing of a complaint to commence a civil action. Indeed, Rule 3 "governs ·the commencement of *all actions.*" Fed.R.Civ.P. 3 advisory committee note (emphasis added). Here, petitioners did not file a civil cover sheet, *see* Local Rule 3.1, or pay the $120.00 filing fee, *see* Local Rule 4.5, when they filed their Petition. This court could thus follow the course chartered by the Magistrate in *Reilly Tar* and summarily dismiss the Petition. *See also Huynh v. Werke,* 90 F.R.D. 447, 450 (S.D.Ohio 1981) ("Plaintiffs' motion seeking an order of the Court requiring the *nonparty* Inland to permit entry and inspection at its local facility, which motion was nominally filed under Fed.R.Civ.P. 34, is not well taken and is overruled.") (emphasis in original). This court prefers, instead, to consider the merits of petitioners' request to enter upon Upjohn's property. *See* Fed.R.Civ.P. 8(f).

### C. *Jurisdiction and Venue*

▇ Before addressing the merits of the · Petition, this court must first dispose of respondents' remaining procedural arguments. Respondents contend that petitioners failed to satisfy the amount in controversy requirement of 28 U.S.C. § 1332, thus depriving this court of subject matter jurisdiction. Although petitioners admit that the relief they seek is not capable of exact valuation, *see* Reply Memorandum at

10, they nevertheless claim that "the fifty thousand dollar threshold is clearly exceeded in this case." Memorandum in Support of Petition at 14. Specifically, petitioners allege they spent over $6,000,000 testing and developing Hemopure in Guatemala, and that future testing places their contribution at risk. *Id.* This court, however, must consider the monetary benefit of the discovery petitioners seek apart from its potential collateral impact on the amount of damages they might recover in the Principal Action. Here, petitioners have not shown that the value of their attendance at future human clinical testing of Hemopure conducted by Upjohn exceeds $50,000. Absent such a showing, this court lacks jurisdiction under § 1332. *See, e.g., Reilly Tar,* 589 F.Supp. at 279 ("[I]f the matter in dispute is incapable of being reduced to a pecuniary standard of value, jurisdiction cannot be predicated upon 28 U.S.C. § 1332").

▇ Petitioners' failure to satisfy the amount in controversy requirement is not fatal, however, as this court has supplemental jurisdiction under 28 U.S.C. § 1367. Section 1367, part of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089, provides,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367 codifies under the name of "supplemental jurisdiction" the case law doctrines of "pendent" and "ancillary" jurisdiction. *See* 28 U.S.C.A. § 1367 (West. Supp.1991) (Practice Commentary). Here, petitioners' request to enter upon Upjohn's property is sufficiently related to the Principal Action that it forms "part of the same case or controversy" under § 1367.[10]

---

**10.** Respondents argue that 28 U.S.C. § 1367 does not apply here, as petitioners filed their complaint in the Principal Action before December ber 1, 1990, the effective date of the Judicial Improvements Act of 1990. *See* Memorandum in Support of Motion to Dismiss at 20, n. 11.

■ Respondents also contend that venue in this court is improper. Specifically, respondents argue that petitioners should have filed the instant action in the federal judicial district in which the land sought to be entered is located. *See, e.g., Slater Steel, Inc. v. Vac–Air Alloy Corp.,* 107 F.R.D. 246 (W.D.N.Y.1985) (principal action pending in District of Oregon, independent action seeking entry upon land of nonparty filed in Western District of New York, where premises were located). The Federal Rules of Civil Procedure do not currently mandate, however, that independent actions must be filed in the judicial district where the nonparty's premises are located.[11] In addition, the instant Petition also seeks entry upon Biopure's property which is located in this district. As a result, venue in this court is proper.

## D. *Merits*

■ Petitioners' request to enter upon the land of a nonparty to observe human clinical testing of Hemopure has nothing to do with any issue in the Principal Action. That action essentially involves whether Biopure wrongfully rescinded the January Agreements. Even if petitioners prevailed in the Principal Action, nothing in the January Agreements provides them with any entitlement to observe human clinical testing conducted by Upjohn.

Biopure and Upjohn entered into a licensing and testing agreement for the United States and certain areas *other than* Central and South America. *See* Affidavit of Carl W. Rausch at ¶ 4. On the other hand, Bio–Vita's license with Biopure covers Central and South America only, excluding Mexico. *See* License Agreement at ¶ 1 (defining "Territory"). One licensee has no right to gain access to testing conducted by another licensee.

In addition, under the terms of its license agreement with Bio–Vita, Biopure agreed to provide Bio–Vita *"data* with respect to clinical and pre-clinical evaluation and testing of [Hemopure]." License Agreement at ¶ 5 (emphasis added). In its petition, petitioners do not request data, but insist that "only actual observation would provide complete information as to the processes employed and the overall testing environment." Memorandum in Support of Petition at 10. Petitioners have no entitlement, however, to observe Upjohn's testing of Hemopure.

The case law provides nonparties such as Upjohn significant protection from the type of intrusive discovery petitioners request here. As an initial matter, the scope of discovery differs significantly between parties and nonparties. Under Fed.R.Civ.P. 26(b), "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." This "relevance" standard does not apply to nonparties. *See Dart Industries Co. v. Westwood Chemical Co.,* 649 F.2d 646, 649 (9th Cir.1980) ("While discovery is a valuable right and should not be unnecessarily restricted ..., the 'necessary' restriction may be broader when a nonparty is the target of discovery."); *see also Laxalt v. McClatchy,* 116 F.R.D. 455, 458 (D.Nev.1986) ("The standards for nonparty discovery ... require a stronger showing of relevance than for simple party discovery.").

■ To obtain discovery from nonparties, a party must establish that its need for discovery outweighs the nonparty's interest in nondisclosure. *See Slater Steel, Inc.,* 107 F.R.D. at 248. *Slater Steel* involved facts similar to this action. In that case, a party in a fraud and contract action

---

Although petitioners did file their complaint in the Principal Action before December 1, 1990, for purposes of this analysis, this court must assume that the Petition constitutes an independent action under Fed.R.Civ.P. 34(c). As a result, the date petitioners filed their Petition controls whether § 1367 applies to this action. Here, petitioners filed their petition on May 23, 1991, some six months after the effective date of § 1367.

**11.** Under a recently proposed amendment to the Federal Rules of Civil Procedure, a party seeking inspection of a nonparty's premises must first obtain a subpoena from the court for the district in which the inspection is to be made. *See* Proposed Fed.R.Civ.P. 45(a)(2) (effective Dec. 1, 1991 absent congressional action to the contrary).

in another district brought an action under Rule 34(c) "seeking access to the plant of [a nonparty] for the purposes of inspection, photographing and videotaping portions of said premises and activities occurring therein." *Id.* at 246–47. The court granted the nonparty's motion for a protective order denying the party access to its plant. *Id.* at 248. The court specifically found that the nonparty "demonstrated that the information sought to be protected is highly confidential commercial matter, [and] that disclosure would cause it significant harm." *Id.* A similar finding is warranted here.

Upjohn paid $179,000,000 for certain rights to develop and market Hemopure in the United States. *See* Petition at ¶ 19. It certainly has a right to protect that investment and bar competitors such as Bio–Vita from access to its property. Bio–Vita cannot use the principal action as a foil to obtain access to the premises of a competitor. Upjohn has a legitimate and strong interest in maintaining its commercial secrets, including the testing of Hemopure. *Cf. Investors Mortgage Ins. Co. v. Dykema,* 598 F.Supp. 666 (D.Ore.1986) (inspection permitted of nonparty land for purpose of conducting appraisal essential to proof of party's defense in the main action).

Petitioners claim that the relief they request "is not unprecedented." Memorandum in Support of Petition at 11. The lone case petitioners cite in support of this proposition, however, is inapposite. That case, *Cuno Inc. v. Pall Corp.,* 116 F.R.D. 279 (E.D.N.Y.1987), involved Fed.R.Civ.P. 34(a), not Rule 34(c), and was an action between parties. In addition, *Cuno* was a patent case, thus raising policy considerations not present in the instant action. For example, the plaintiff in *Cuno* wished to inspect, observe, videotape, and photograph defendant's production process, which it claimed infringed its patent. *Id.* at 280. The court held that "inspections are not an extraordinary means of discovery in patent suits." *Id.* at 281. Here, the petition to enter upon land of a nonparty is extraordinary.[12]

---

12. This court also notes that the requested relief would impinge upon the privacy rights of the

## III

## CONCLUSION

Petitioners' request to enter upon Upjohn's property, even if considered an independent action under Fed.R.Civ.P. 34(c), represents such a departure from the scope of the liberal discovery rules that this court has no choice but to ALLOW respondents' motion to dismiss the Petition.

patients participating in the human clinical testing of Hemopure.