**LEMANIK, S.A., Plaintiff,**

v.

**McKINLEY ALLSOPP, INC., et al., Defendants.**

No. 88 Civ. 3674 (RO).

United States District Court,
S.D. New York.

June 19, 1989.

Jeffrey E. Livingston, Gilbert, Segall and Young, New York City, for plaintiff.

Jewel Humphrey, Norman Roy Grutman, Grutman Katz Greene & Humphrey, New York City, for McKinley Allsopp, Inc.

Martin P. Unger, Gaston & Snow, New York City, for Pierre E. Montalette and George R. Begley.

BARBARA A. LEE, United States Magistrate.

This is an action for securities fraud by a Swiss financial institution against a broker/dealer and two of its employees, pursuant to §§ 10(b) and 15(c)(1) of the Securities Exchange Act of 1934 (the "1934 Act"), 15

U.S.C. §§ 78j(b), 78o (c)(1); Rules 10b–5 and 15cl–5 thereunder, 17 C.F.R. §§ 240.-10b–5, 240.15cl–5; and § 12(2) of the Securities Act of 1933 (the "1933 Act"), 15 U.S. C. § 77l(2). A pendent claim for breach of fiduciary obligation is also pleaded, and plaintiff seeks treble damages under the federal anti-racketeering statute, 18 U.S.C. § 1962, on the basis of the predicate violations of the federal securities laws. By Order of Reference entered December 23, 1988, the case was referred to me by the Hon. Richard Owen, U.S.D.J., for pretrial supervision. Defendant McKinley Allsopp, Inc. ("McKinley") now moves pursuant to Rule 37(a), Fed.R.Civ.P., to compel plaintiff Lemanik, S.A. ("Lemanik") to answer interrogatories and document requests concerning the identity of Lemanik's customers and the financial condition and investment experience of Lemanik. Also before me is a separate dispute relating to Lemanik's interrogatories to defendants, submitted by letter pursuant to my procedures for informal resolution of discovery disputes.

For the reasons stated below, McKinley's motion is denied and Lemanik is awarded its costs and expenses pursuant to Rule 37(a)(4), in an amount to be determined as herein set forth. Defendants' objections to Lemanik's interrogatories are sustained in part and overruled in part, with each party to bear its own costs on that application.

## BACKGROUND

Lemanik is a "Swiss fiduciary corporation" which in early 1987 opened an account at McKinley's Paris office.[1] McKinley is a registered broker/dealer and the individual defendants are alleged to be officers and employees of McKinley, two of whom had supervisory responsibilities at McKinley's Paris office. The Amended Complaint alleges that, although Lemanik's account was not a discretionary one, McKinley treated it as such in making purchases and sales without advance authorization (¶¶ 14, 16); that three of the issues purchased for Lemanik's account were "illi-

quid and highly speculative" and "involved personal interests on McKinley's part" as a market maker or underwriter (¶¶ 17–18, 20, 23, 27); that McKinley failed to disclose its relationship to the issuers and made material misrepresentations of fact upon which Lemanik relied in connection with some of the purchases (¶¶ 27, 33); and that McKinley failed to follow Lemanik's instructions with respect to the handling of the account (¶¶ 30–41).

McKinley denies the essential allegations of the Amended Complaint and asserts 26 affirmative defenses, including allegations that Lemanik is not the real party in interest and accordingly has suffered no damage; and that Lemanik is chargeable with knowledge of all material facts relating to the account (Amended Answer ¶¶ 108–109, 111).

The Amended Complaint describes plaintiff as follows:

> Lemanik is a Swiss fiduciary corporation which *has generally restricted its investments to relatively conservative European based investments.* Prior to its dealings with defendants, described below, Lemanik had *little investment activity in the United States securities markets.* [Am.Cplt. ¶ 2, emphasis added]

By way of "Background," plaintiff alleges:

> In the initial conversations between Lemanik and McKinley's representatives, *McKinley was made aware of Lemanik's fiduciary relationship to its own clients,* Lemanik's interest in investing in high quality American stocks, and Lemanik's need for a broker with expertise in the American markets. [*id.* ¶ 12, emphasis added]

The discovery requests at issue on McKinley's motion relate principally to the italicized portions of the Amended Complaint and to McKinley's real-party-in-interest and "estoppel" defenses. One group of documents requests calls for far-ranging information concerning the identity of Lem-

---

**1.** Although defendants emphasize the separate corporate identity of McKinley Allsopp, S.A., the Paris branch, which is not a party to this action, the distinction is not relevant to the issues raised by these motions.

anik's clients and their investments and affairs, including documents relating to "damages allegedly suffered" by Lemanik's "Clients" or other persons beneficially interested in Lemanik's account with McKinley (68, 69); "all securities holdings or other investments" of those categories of persons (81, 82); accounts maintained by "Clients" with other American brokers (84) and substantially all of Lemanik's client account records relating to the investment transactions of such persons (86–89). "Clients" is defined in ¶ G of the "Instructions and Definitions" to McKinley's Rule 34 Request as "the persons or entities to whom Lemanik owes a fiduciary duty as referred to in paragraph 12 of Lemanik's Amended Complaint." Another group of document requests (20, 78–80, 83, 88, 93–94) and a related interrogatory call for sweeping information about the financial affairs and investment experience of Lemanik, in the United States and worldwide. Categories of information sought include "all documents relating to Lemanik's finances including, without limitation, tax returns," and other listed financial records (20); and "all documents relating to all securities holdings or other investments of Lemanik" (80), as well as a somewhat more specific request for documents relating to investments in American companies (93).

Lemanik objected to these discovery requests on the grounds that all of the disputed items are irrelevant to the subject matter of this action and that some are, in addition, protected from disclosure by Swiss law. McKinley contends, in general terms, that it seeks "to establish exactly what sort of entity Lemanik was and whether it was trading the account ... for itself or for specified clients"; "to discover the nature of the services performed by Lemanik in general and with respect to the account" as well as its "investment guidelines and responsibilities ... managerial expertise and sophistication as an investor."[2] In addition, certain of the requests are described as intended "to establish the lack of bona fides" or "to flush out the truth or falsity" of certain allegations of the Amended Complaint.[3]

## DISCUSSION

### I. MCKINLEY'S MOTION TO COMPEL RESPONSES TO ITS INTERROGATORIES AND DOCUMENT REQUESTS.

Because of the confusing and in some respects inconsistent record on McKinley's motion, it is necessary to begin with determination of what is actually in dispute and what affidavits and exhibits have been considered.

The papers on McKinley's motion consist primarily of attorney affidavits stating the parties' respective positions and attaching copies of the pleadings, discovery requests, and correspondence between counsel with respect thereto. In addition, McKinley has submitted affidavits of two employees of its Paris office, which are discussed below in connection with the client identification issue. Lemanik's opposing papers include a so-called "affidavit" of one Cesare Sagramoso, neither signed nor sworn to, relating to the Swiss secrecy issues and an "affidavit in opposition" of Lemanik's attorney which purports to furnish "responses to each discovery request" at issue on this motion.[4]

I have not considered the Sagramoso document for any purpose in connection with this motion. Although the accompanying affidavit of Lemanik's attorney identifies the filed materials as "a copy of an affidavit ... sent by FAX" and represents that "[t]he originals ... will be available shortly, having been sent by courier,"[5] the

---

2. Affidavit of Jewel Humphrey sworn to March 10, 1989 and submitted in support of the motion (hereinafter cited as "Humphrey March 10 aff." to distinguish it from the same attorney's reply affidavit sworn to March 23, 1989), ¶ 2.

3. *Id.*, ¶¶ 2, 4; *see* also *id.*, ¶¶ 13–14.

4. Since both affidavits by Lemanik's attorney Jeffrey Livingston were sworn to on March 21, 1989, they will hereinafter be referred to as "Livingston I" (discussing plaintiff's opposition to the instant motion and attaching the materials relating to Swiss secrecy) and "Livingston II" (plaintiff's "responses" to the discovery requests at issue).

5. Livingston I, ¶ 2.

Clerk's docket sheet reveals that no signed or sworn original affidavit was ever filed; nor was any conformed copy of any such original furnished to chambers. Since even the FAX copy was unsigned and unsworn, it appears that what was filed was the draft affidavit "sent by FAX" by plaintiff's attorney for signature, not a copy of what was received by FAX from the affiant. This procedure is improper and potentially misleading; with the availability of FAX and other means of rapid trans-Atlantic communication, there is no excuse for resort to such an expedient.

I have considered Lemanik's "responses" to the discovery requests filed in the form of an "affidavit in opposition" to this motion for the purpose of determining what is actually in dispute, without intending to condone the practice of counsel "conferring" through papers filed with the court. I have also considered for the same purpose the "responses" to certain interrogatories included in a letter from Lemanik's attorney to McKinley's attorney. Although an attorney's letter is not the sworn answer of the party to which the propounder of the interrogatories is entitled pursuant to Rule 33, it is subject to the requirements of Rule 26(g) and therefore probative of what is in dispute.

McKinley's notice of motion requests an order compelling Lemanik to respond to interrogatory 19 and document requests 20, 68, 69, 78–84, 86–89 and 93. The supporting affidavit includes a "wherefore" clause requesting relief as to the same items (Humphrey March 10 aff., p. 9), but elsewhere states that after conferences between counsel pursuant to directions given at a pretrial conference held on January 31, 1989, the "discovery matters which are still outstanding" are interrogatory 19 and document requests 20, 78–84, 86–89, 93 and 94 (id., ¶¶ 5–6). Neither list appears to be accurate.

The omission of items 68 and 69 from ¶ 6 and the inclusion of item 94 appear to be typographical errors in the moving affidavit. Requests 68 and 69 are treated by both parties as still in dispute (Humphrey March 10 Aff. ¶ 10 and Exhibits 2 and 3 thereto; Livingston II ¶ 4). Conversely, 94 is not mentioned in the notice of motion or discussed in either affidavit and appears to have been responded to (Ex. 2 to Humphrey March 10 aff., p. 3) as limited after conference (Ex. 3 to id., p. 4).

Disputes relating to Interrogatory 19 and document requests 87 and 89 appear to be moot. Document requests 87 and 89 were subsequently limited by agreement of counsel (Livingston II ¶¶ 7–8; see also Exhibits 2 and 3 to Humphrey March 10 Aff.) and responded to as so limited (Livingston II, ¶¶ 7–8). McKinley's interrogatory 19, calling for identification of "each person with whom Lemanik has or had dealings with [sic] concerning investments in the United States securities market," originally unlimited in time, was subsequently limited to the years 1986 and 1987. (Ex. 3 to Humphrey March 10 Aff.) Information with respect to 1987 was produced, and the only issue argued in the moving papers was McKinley's desire for 1986 information. That dispute was mooted by Lemanik's further response agreeing to furnish the 1986 information (Livingston II ¶ 2). While neither Lemanik's use of sur-reply papers on this motion to respond to interrogatories nor McKinley's failure to limit the relief requested on this motion are appropriate procedures on a Rule 37 motion, they do clearly moot the issue with respect to Interrogatory 19.[6]

6. The papers submitted by both parties on this motion present an extraordinary obstacle course to one attempting to discern what discovery requests are actually in dispute. Attached to the notice of motion are the full text of McKinley's document requests (only some of which are alleged to be in dispute) and the full text of McKinley's interrogatories and Lemanik's responses (although only one interrogatory is claimed to be in dispute and in fact, as discussed above, even that dispute had already been substantially narrowed). Attached to the separate affidavit of McKinley's attorney in support of the motion are the full text of Lemanik's responses to the document requests; a letter from Lemanik's attorney furnishing additional responses to many items, including but not limited to the ones in dispute (Exhibit 2 to Humphrey March 10 Aff.) and a memorandum described as reflecting the results of the conference between counsel on all discovery disputes, including but not limited to McKinley's agree-

The remaining categories of documents in dispute are discussed according to subject matter, since there is some overlap between the materials called for by the several requests, as well as the reasons McKinley contends they are discoverable.

## A. *Client Information.*

McKinley argues principally that the documents sought are relevant to its defense that Lemanik is not the real party in interest. It also suggests that discovery of the identity of Lemanik's clients may reveal that one or more of them had knowledge or gave instructions inconsistent with reliance or other essential elements of a cause of action for securities fraud.

### 1. Real Party in Interest.

■ McKinley contends that if Lemanik's clients were the beneficial owners of the securities traded in Lemanik's name, they and not the record holder are the "real parties in interest."

Rule 17(a), Fed.R.Civ.P., does not define "real party in interest," which is determined in accordance with the substantive law governing the cause of action sued upon. The real party in interest is the one who, under applicable substantive law, has the legal right which is sought to be enforced. *Weniger v. Union Center Plaza Associates,* 387 F.Supp. 849, 855 (S.D.N.Y. 1974), *cited with approval in In re Comcoach Corp.,* 698 F.2d 571, 573 (2d Cir. 1983); *accord, Bass v. Campagnone,* 838 F.2d 10, 11 (1st Cir.1988) (RICO); *U–Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1038 (9th Cir.1986) (Lanham Act); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250, 256–57 (5th Cir.1980) (diversity action applying Texas law).

■ Since the claims here asserted arise under the federal securities and anti-racketeering laws, federal law determines who is the real party in interest. *Drachman v. Harvey,* 453 F.2d 722 (2d Cir.1971). The record holder of securities is a "real party in interest" who may sue in his own name for securities fraud, whether the claim arises under Rule 10b–5, *Gordon v. Burr,* 366 F.Supp. 156, 171–72 (S.D.N.Y.1973), *aff'd in part and rev'd in part on other grounds,* 506 F.2d 1080 (2d Cir.1974); § 12(2) of the 1933 Act, *Monetary Management Group of St. Louis, Inc. v. Kidder, Peabody & Co.,* 604 F.Supp. 764, 766–67 (E.D.Mo.1985); or State law, *Bache & Co. v. International Controls Corp.,* 324 F.Supp. 998, 1005 (S.D.N.Y.1971), *aff'd on the opinion below,* 469 F.2d 696 (2d Cir. 1972). The test in all such cases is whether plaintiff has "such right as to afford [defendant] the protection of *res judicata* when the suit is terminated." *Blau v. Lamb,* 314 F.2d 618, 620 (2d Cir.), *cert. denied,* 375 U.S. 813, 84 S.Ct. 44, 11 L.Ed. 2d 49 (1963). Lemanik is a "purchaser" within the meaning of §§ 12(2) and Rule 10b–5 and as such is entitled, as a matter of law, to bring this action in its own name, whether it was acting for its own account or that of its clients.

With respect to a civil RICO claim, the real party in interest requirement has an additional element: plaintiff must show that the "injury" sued upon flows from the predicate acts alleged to constitute the "pattern" of racketeering. *Bass,* 838 F.2d at 11–12. That requirement is also satisfied here, where plaintiff's alleged "injury" within the meaning of § 1964 flows from the predicate acts of securities fraud.

McKinley has not identified any issue of fact on which the "real party in interest"

ment to limit some of the items in dispute (Exhibit 3 to *id.*) In addition, the moving affidavit purports to "incorporate by reference" some 145 pages of affidavits and exhibits previously submitted pursuant to local Civil Rule 3(*l*) and largely duplicative of the moving papers. The movant has made only the most cursory attempt to "specify the issues ... resolved and the issues remaining unresolved" as required by local Civil Rule 3(f), leaving it to the court's own scrutiny of the voluminous papers

submitted to reveal that some of the relief requested in the notice of motion and the "wherefore" clause of the moving affidavit is moot. Lemanik's papers in opposition contribute to the confusion by including a separate affidavit of its attorney (Livingston II), purporting to constitute further "responses" to the document requests but including no indication of whether the responses in the "affidavit" vary from or add to the statements in the same attorney's earlier letter (Ex. 2 to Humphrey March 10 Aff.)

determination depends in this case. This case is therefore readily distinguishable from the authorities relied on by McKinley permitting discovery where determinations of who was the real party in interest turned on disputed issues of fact.

### 2. Defenses Based on Knowledge or Wrongdoing of Beneficial Holders.

■ McKinley suggests that "the 84 clients (or some of them) *could have* instructed Lemanik to invest in a series of highly speculative stocks knowing that most would result in losses but hoping for a big payoff on one or two winners, or some of the clients *might have specific knowledge about Presto–Tek* or the other securities involved herein." (Humphrey March 23 Aff. ¶ 4, emphasis added). This is pure conjecture. Should proper discovery yield a factual basis for such a theory, a narrower discovery request (directed to the specific issues shown to be present in the case) might be appropriate; in no event would it warrant a walk through 84 clients' confidential financial transactions in the hope that something of arguable relevance might turn up. Even before the 1983 amendments to the discovery rules, it has long been the rule in this Circuit that "the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *In re Surety Ass'n of America*, 388 F.2d 412, 414 (2d Cir.1967) (quoting *Broadway & Ninety–Sixth St. Realty Co. v. Loew's Inc.*, 21 F.R.D. 347, 352 (S.D.N.Y.1958)); *Coastal States Marketing, Inc., v. New England Petroleum Corp.*, 471 F.Supp. 131, 136 n. 10 (S.D.N.Y.1979); *In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y. 1975).

McKinley also speculates that the clients for whom Lemanik acted might have included Daniel Cohedaly, a former employee of the Paris office implicated in the alleged fraud; Cohedaly's father; or Patrick du Bouzet, a Paris stock broker whose possible connection with the matters in issue is less clear (del Moral Affidavit sworn to February 9, 1989 ¶¶ 3, 8, 9, 12, 13; Cohen Affidavit sworn to February 17, 1989 ¶ 4). The two employees whose affidavits discuss this theory state no facts from which such a conclusion could reasonably be drawn, but repeatedly resort to such locutions as "I felt that Lemanik's opening of an account with Cohedaly at S.A. involved some type of close relationship" (Cohen Aff. ¶ 4); and "Indeed, it appears to me that du Bouzet may have an interest in the Lemanik account at S.A." (del Moral Aff. ¶ 9). Although an interrogatory specifically asking whether Cohedaly, his father, or du Bouzet was one of Lemanik's "clients" would have determined whether or not this issue was in the case, McKinley posed no such question. Instead, it seeks much broader discovery of all of Lemanik's clients, totally out of proportion to the hypothesis that one of the suspected wrongdoers is among the beneficial owners. The inference that this hypothesis is a mere pretext for some other purpose is unavoidable. If McKinley's purpose is to search for a new theory or to pressure Lemanik into discontinuing the suit in order to avoid damaging its relations with its own clients, neither is a proper purpose of discovery.

Since the identity of Lemanik's clients is not demonstrably relevant to any issue in this case, it is unnecessary to reach the other factors which must ordinarily be balanced in determining whether the court, in its discretion, should require disclosure of matters deemed confidential under foreign law, *see generally Trade Development Bank v. Continental Ins. Co.*, 469 F.2d 35, 41 (2d Cir.1972). Even where the information is "highly relevant," the court's discretion will be exercised against disclosure where defendant's "need" for the information does not outweigh the hardship to plaintiff. *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 523, 525–28 (S.D.N.Y.1987). Defendant here has made no showing of a legitimate need to know either the identities of Lemanik's 84 clients or their investment profiles.

### B. *Lemanik's Finances and Investment Experience*

Defendant argues that Lemanik's tax returns and other documents relating to its

financial condition are relevant to whether Lemanik has been "damaged" within the meaning of Rule 10b–5 (Humphrey March 10 Aff., ¶ 9). To the extent that that argument is the mirror image of the requests for client information on the real-party-in-interest issue, discussed above, Lemanik's objections are sustained for the same reasons. To the extent that this information may bear on other issues, the broad requests are totally out of proportion to their relevance.

### 1. Damages.

■ Although tax returns are not privileged, *see St. Regis Paper Co. v. United States*, 368 U.S. 208, 218–19, 82 S.Ct. 289, 295–96, 7 L.Ed.2d 240 (1961), their disclosure in civil actions requires "a balancing of the policy of liberal discovery against the policy of maintaining the confidentiality of tax returns." *SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y.1985). The party seeking discovery of tax returns has the burden of establishing their relevance to the subject matter of the action. *United States v. Bonanno Organized Crime Family*, 119 F.R.D. 625, 627 (E.D.N. Y.1988). If that requirement is met, the court must also find that "there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Id.* (quoting *Cymaticolor* and collecting cases). It is not necessary to reach the second prong of the *Bonnano* test because the moving papers do not establish that anything in Lemanik's tax returns is relevant to the subject matter of this action. Under the rescissionary measure of damages applicable to Lemanik's § 12(2) claim, the court may not consider the tax consequences to the purchaser. *Randall v. Loftsgaarden*, 478 U.S. 647, 656–60, 106 S.Ct. 3143, 3149–52, 92 L.Ed.2d 525 (1986). Since Lemanik does not allege that McKinley deceived it concerning the tax benefits, as distinguished from the investment quality or characteristics of the securities allegedly purchased without authorization, the tax consequences of these transactions are not in issue, even if Lemanik elects the out-of-pocket, rather than the rescissionary, measure of damages in computing its loss under Rule 10b–5. *See, id.* at 667–70, 106 S.Ct. at 3155–57 (concurring opinion of Blackmun, J.) Under either measure of damages, the relevant information concerning the prices paid, income or distributions received, proceeds on resale (or value at the time of trial if the securities have not been resold) can be determined from the records relating to Lemanik's purchase and sale transactions. To the extent that McKinley is entitled to information concerning transactions by Lemanik, otherwise than through McKinley, in the securities purchased through the McKinley account, specific documents should be identified in a properly drafted request. McKinley is not entitled to a wide-ranging evaluation of Lemanik's overall financial condition in order to determine how much it lost on the securities purchased through the account out of which this action arises.

### 2. Lemanik's Investment Sophistication.

■ McKinley also argues that the information called for by document requests 79–84 and 93 is relevant to Lemanik's sophistication as an investor, and specifically to its experience, if any, with speculative securities (Humphrey March 10 Aff. ¶¶ 2, 12). McKinley hopes to establish that, contrary to the allegations of the Amended Complaint, the three "illiquid and highly speculative" investments expressly complained of were authorized by Lemanik (*see id.* ¶ 12). For this purpose, McKinley "insists on documents which will permit it to make an analysis of the history of the securities, commodities and other investments Lemanik purchased and sold for its clients." (*id.*) While evidence of investor sophistication is relevant to the elements of deception and reliance in a securities fraud case, *Quintel Corp., N.V. v. Citibank, N.A.*, 596 F.Supp. 797, 801–02 (S.D.N.Y. 1984) and therefore discoverable, *Weiner v. Bache Halsey Stuart, Inc.*, 76 F.R.D. 624, 625–28 (S.D.Fla.1977) (brokerage account records); *Houlihan v. Anderson–Stokes, Inc.*, 78 F.R.D. 232, 234 (D.D.C.1978) (tax returns), prior securities transactions are relevant only to the extent that there is an adequate nexus with the investments at

issue in this action, *Davidson Pipe Co. v. Laventhol and Horwath*, 120 F.R.D. 455, 460 (S.D.N.Y.1988) and cases cited. No such nexus has been demonstrated here. McKinley is not entitled to examine Lemanik's entire business in the hope of finding a transaction inconsistent with the allegations of the Amended Complaint.

### 3. Credibility.

■ McKinley also seeks evidence of Lemanik's "expertise and trading history and investment history of the various accounts at Lemanik" for purposes of impeachment, specifically with respect to the credibility of Lemanik's allegations regarding its lack of familiarity with the U.S. securities markets (Humphrey March 10 aff. ¶ 13). In view of the breadth of the requests, some factual basis for believing that impeaching evidence will be revealed by the discovery sought is necessary. *In re Fontaine*, 402 F.Supp at 1221; *Davidson Pipe Co.*, 120 F.R.D. at 463. The moving papers, which discuss these theories in only the most conclusory terms, do not satisfy that requirement.

In summary, Lemanik has failed to present any factual basis for its speculations that the wide-ranging discovery it seeks will lead to the discovery of admissible evidence. Its memorandum of law admits as much, at least with respect to the affirmative defenses, but argues that defendants' "current inability to present a factual basis for their defenses demonstrates that discovery is necessary" (Def. Mem. dated April 10, 1989 at 12). On the contrary, what it demonstrates is precisely the kind of blanket assertion of boilerplate defenses without factual basis which the 1983 amendments to Rules 11 and 26 were intended to discourage. *See* Advisory Committee Note to the 1983 amendment to Rule 11, 97 F.R.D. 165, 198–99. If there is a factual basis for any of McKinley's 26 affirmative defenses, it may frame appropriately narrow discovery requests calling for specific information, consistent with the rulings as to relevance set forth herein. Lemanik's objections to document requests 20, 68, 69, 78–84, 86, 88 and 93 are sustained.

## II. LEMANIK'S INTERROGATORIES AND DOCUMENT REQUESTS TO DEFENDANTS.

■ Defendants are required to respond to the interrogatories and document requests in accordance with the definitions and instructions contained in local Civil Rules 46 and 47; broader definitions and additional instructions may be disregarded. All interrogatories and document requests are to be limited to the period prior to May 26, 1988. As so modified, Lemanik's interrogatories 1–4, 6–9, 14–17 and 20–22 are relevant to the subject matter of this action and permissible in scope at this stage of the case pursuant to Rule 46. Interrogatories 18 and 19 are to be answered, limited to minutes of the Board of Directors of McKinley Allsopp, Inc. which refer to Lemanik, S.A. by name or by account number. Document Request No. 1, calling for the production of documents identified in response to the interrogatories, is proper. "Identification" as defined in local Civil Rules 46 and 47 is not intended to duplicate production, but the party producing documents must make clear what documents are being produced and which requests they respectively respond to.

## III. EXPENSES

■ Rule 37(a)(4), Fed.R.Civ.P., requires an award of expenses, including reasonable attorneys' fees, after an opportunity for hearing "unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust." The foregoing discussion makes clear that there was no factual or legal basis for the discovery sought by McKinley on this motion. If McKinley contends that the "other circumstances" exception is applicable here, it may submit evidence of the factual basis for such contention. Lemanik may serve and file affidavits and exhibits evidencing its expenses by June 30, 1989. Attorneys' fees will not be awarded unless documented in accordance with the requirements of *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147–48 (2d

Cir.1983). To the extent that Lemanik's "expenses incurred in opposing the motion" included the cost of preparing papers excluded from consideration, those costs should not be imposed on McKinley. Accordingly, no part of the expenses claimed may relate to the preparation, reproduction or transmittal of (1) the so-called "affidavit" of Sagramoso; or (2) the "Livingston II" affidavit by which Lemanik served further "responses" to McKinley's discovery requests in the form of an affidavit in opposition to this motion. McKinley may serve and file opposing papers, including, if it so elects, a written request for a hearing (specifying the disputed issues of fact to be heard), by July 14, 1989.

Since the dispute relating to Lemanik's interrogatories to defendants was submitted informally, the mandatory provisions of Rule 37 are not applicable, and there is nothing in the record before me to suggest that any sanction is appropriate with respect to that dispute.

For the reasons above stated, it is hereby

ORDERED:

1. McKinley's motion to compel further answers to interrogatory 19 and document requests 87 and 89 is denied as moot in light of the answers furnished following conferences between counsel, which are sufficient in accordance with the standards of relevance discussed herein.

2. McKinley's motion to compel further answers to document requests 20, 68, 69, 78, 79–84, 86, 88 and 93 is denied on the grounds that the information sought is not relevant to the subject matter of this action.

3. Lemanik's motion to compel further answers to its interrogatories and document requests to defendants is granted subject to the limitations set forth in Part II of this Opinion.

4. Lemanik is awarded the reasonable expenses of opposing McKinley's motion, in an amount to be determined in accordance with Part III of this opinion.

The foregoing determination is made pursuant to 28 U.S.C. § 636(b)(1)(A). Any party may object to this determination by filing written objections in accordance with the procedure specified in Fed.R.Civ.P. 72(a) and Rule 7 of the local Rules for Proceedings before Magistrates.