**In re Esther SHUR, Debtor.**

**LAWRENCE ARMS ASSOCIATES,
Plaintiff,**

v.

**Esther SHUR, Defendant.**

**Bankruptcy No. 194–12633–352.
Adversary No. 194–1306–352.**

United States Bankruptcy Court,
E.D. New York.

Sept. 28, 1998.

Kevin Nash, Finkel, Goldstein Berzow & Rosenbloom, New York, for Plaintiff.

Gary Ginsburg, Neiman Ginsburg & Mairanz P.C., New York, for Debtor–Defendant.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge.

Pursuant to a Rules 34(c) and 45 of the Federal Rules of Civil Procedure ("Fed. R.Civ.P."), made applicable in bankruptcy by Rules 7034 and 9016 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."). Lawrence Arms Associates has moved for an order to compel Barry Brahver ("Brahver"), debtor Esther Shur's nonparty spouse, to respond to discovery attempts. Movant seeks information relating to any transfers of property between Brahver and Shur as well

as any business transactions between the two for use in this adversary proceeding seeking a determination that Lawrence Arms Associates' claim against the Debtor is non-dischargeable under 11 U.S.C. § 523(a)(2) as well as a denial of Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(4)(A), (a)(4)(B), and (a)(5). Brahver has refused to answer questions and objected to documents requests on grounds of either relevance or the 'anti-marital facts' privilege.

## BACKGROUND

After scheduling difficulties and an initial motion to compel,[1] an examination was scheduled for July 24, 1995 (the examination) at which Brahver was to be deposed and produce subpoenaed documents.

The subpoena commanded Brahver to produce the following five categories of documents:

(1) All documents in Brahver's custody, possession or control relating, referring or commenting upon any and all bank, brokerage or other financial accounts maintained by Brahver (or which he had or has control or signatory authority over) since 1990, including without limitation, all statements, canceled checks and deposit slips.

(2) All documents in Brahver's custody, possession or control relating, referring or commenting upon any and all bank, brokerage or other financial accounts maintained by Brahver in which Esther Shur had or has signatory authority.

(3) All documents relating, referring or commenting upon any transfer(s) of real or personal property made by Esther Shur to Brahver since 1990, including without limitation: (i.) mortgage interests with respect to 43 Pros-

pect Place, and 171 Girard Avenue; and (ii.) interests in 100 Clark Street, Brooklyn, New York; 440 Realty Co., and 993 East 19th Street, Brooklyn, New York.

(4) All federal, state and city tax returns filed by Brahver since 1990 with all supporting schedules and work papers.

(5) All documents relating, referring or commenting upon any mortgage(s) obtained by Brahver with respect to property located at 993 East 19th Street, Brooklyn, New York since 1990, including without limitation, all applications, financial statement and appraisal information prepared and executed in connection with any mortgage financing.

At the examination Brahver did not produce the requested documents. Instead his counsel provided written objections based, for the most part, on relevancy.[2] (Pl.'s Supplemental Mot. To Compel, Ex. B.)

When questioning began, Brahver repeatedly declined to answer on grounds of either relevance or the 'intermarital fact' privilege (either on his own or on the objection of his counsel).[3] This resulted in the examination being halted, and, after a discussion between counsel, Brahver left the examination. The truncated examination resulted in the motion to compel being renewed by way of a 'supplemental' motion to compel. In the supplemental application movant asserts that the requested information is relevant and that the previously adjourned motion addressing the marital privilege issue was ripe for resolution. Brahver disputes the accuracy of the deposition transcript and raises numerous objections, including: improper service of the second subpoena; plaintiff's failure to establish the need for the sought for information from a

---

1. At the June 14, 1995 pre-trial status conference, the motion to compel was adjourned and service issues were resolved by plaintiff being afforded the opportunity to reserve the subpoena. (Application to Renew at ¶ 3.)

2. The objection to Request No. 3 stated, with no supporting argument, that the request for documents relating to 993 East 19th Street was overbroad.

3. At the deposition, the privilege was referred to as the privilege of intermarital fact (*See* Pl.'s Supplemental Mot. To Compel Brahver Deposition, Ex. C at 10–12, 19–20, 25–27), but Brahver's responsive papers refer to the privilege against anti-marital facts. (*See* Brahver's Resp. to Supplemental Mot. To Compel at ¶ 6.)

nonparty; plaintiff's failure to distinguish between the spousal privileges; the relevance of the requested information; and plaintiff's purported true motive of attempting to obtain discovery for use in a stayed state court proceedings in contravention of the automatic stay.[4]

## DISCUSSION

### Service of the Subpoena

■ Brahver objects to being served in his driveway by plaintiff's process server and requests a court ruling as to whether the service was a nullity due to the trespass. (Brahver's Resp. to Supplemental Mot. To Compel at ¶ 2, c.) In light of the prior service issues herein, (see supra n. 1), this objection is disingenuous at best. Suffice it to say that personal service of any document involves a trespass, and Brahver has failed to provide any authorities in support of his request for a ruling or specifics as to how the service was objectionable or actionable.

### Relevance

Sought for discovery must be "relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1) (made applicable in Bankruptcy by Fed.R.Bankr.P. 7026). This provision is construed broadly. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978); Sackman v. Liggett Group, Inc., 173 F.R.D. 358, 361 (E.D.N.Y.1997).

■ Brahver is married to the Debtor—yet he strongly asserts his nonparty status as a basis for restricting discovery.[5] Assuming a different rule exists for nonparties, Brahver is in a position analogous to an individual asserting a privilege, and he bears the burden in proving that he deserves consideration as a nonparty. See United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir.), cert. denied, — U.S. —, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996) (burden on party asserting privilege to establish the essential elements of the privilege); Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 558 (S.D.N.Y.1994) ("the party resisting discovery has the burden of supporting its position"). Aside from his not being named as a party-defendant in this action. Brahver fails to establish any basis which qualifies him for special consideration. Brahver's relationship with the Debtor clearly diminishes his attempt to fly the nonparty flag and serves to distinguish the nonparty discovery dispute cases cited in his papers. Moreover, should discovery yield information responsive to this proceeding, Brahver would fall closer to (if not within) the party side of the party-nonparty spectrum. So while we believe plaintiff's need (versus the inconvenience suffered by Brahver in responding to discovery) satisfies any conceivable weighing test for seeking discovery from a nonparty, see Bio–Vita, Ltd. v. Biopure Corp., 138 F.R.D. 13 (D.Mass. 1991) ("[t]o obtain discovery from nonparties, a party must establish that its need for discovery outweighs the nonparty's interest in nondisclosure"); Micro Motion Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1323 (Fed.Cir. 1990) ("[e]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.") (citations omitted), Brahver does not warrant such consideration since he is not a true stranger to this action.

■ Lawrence Arms premises its discovery of Brahver on its need to determine whether any property transfers or any business transactions took place between Brahver and Shur. Brahver's counsel characterizes this justification as conclusory given the specific causes of action set forth in the complaint.[6] While the sought for discovery is clearly not relevant to Movant's 11 U.S.C.

---

4. Since this last objection is speculative and unsupported, it need not be addressed at this time.

5. Movant's papers indicate that the marriage may be on the rocks to the point of separation or divorce. Accordingly, this opinion is applicable as to circumstances of the motion when made.

6. In addition, Brahver's counsel asserts standard discovery objections (intrusiveness, overbreadth, and the burden placed on Brahver) without substantiation or supporting argument.

§ 523 cause of action,[7] it is, however, relevant to plaintiff's objections to discharge raised under 11 U.S.C. § 727. Plaintiff disputes the $ 1,000 in personal property listed in Debtor's schedules,[8] Debtor's $ 6,250 valuation of four partnership interests,[9] and the percentage of shares held by Debtor in 1261 Corporation.[10] These challenges are bolstered by the financial statements that Debtor gave plaintiff several years prior to the bankruptcy which reflect significant assets being held by Debtor.[11] The financial statements (viewed together with Debtor's claimed indebtedness and the disputed information contained in Debtor's schedules) reasonably justify plaintiff's attempt to determine whether the diminution of Debtor's assets was the result of transfers to Debtor's husband in connection with the § 727 cause of action.[12] Moreover, "... discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer*, 437 U.S. at 351, 98 S.Ct. 2380. Since Brahver is not entitled to any special non-party consideration, the sought for information is sufficiently relevant to be discoverable in this proceeding.

 As part of its efforts to determine whether Brahver has Debtor's assets under his control, Lawrence Arms seeks Brahver's tax returns dating back to 1990—the year Brahver married Shur. (Brahver Dep. at 5.) Brahver, citing *Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 609 (S.D.N.Y. 1989), challenges this request. Generally, tax returns are discoverable if they are relevant and the requesting party demonstrates some compelling need, such as the information reflected in the returns is not otherwise available. *See e.g., Hazeldine v. Beverage Media, Ltd.*, No. 94 Civ. 3466(CHS), 1997 WL 362229 (S.D.N.Y.1997); *Senise v. American Motor Club (In re American Motor Club )*, 129 B.R. 981, 988 (Bankr.E.D.N.Y. 1991) (citing cases) (two-prong test applied by courts in the Second Circuit). Here, movant fails to argue any compelling (or special) need to justify what, in light of its other broad documents requests, may result in redundant discovery. Accordingly, pending compliance with the other discovery requests, Brahver need not produce the tax documents sought in request number four of Lawrence Arms' subpoena.

## Privilege

Since federal law provides the rules of decision in this proceeding,[13] any question of

---

7. The 1987 financial statements which form the basis of plaintiff's 11 U.S.C. § 523 cause of action reflect the alleged net worth of debtor and her previous husband Paul Shur. (Compl.¶ 18.) No allegations have been made that Brahver was involved in the transaction at issue in the 11 U.S.C. § 523 cause of action.

8. Movant relies on Debtor's alleged prior financial statements showing average net worth of approximately $ 93,000 between September 30, 1987 and March 31, 1991. Paragraph 37.c. of the complaint alleges that: "the values that Debtor set forth in prior financial statements for tangible personal property were as follows:
 March 31, 1991 Balance Sheet $50,000.00
 April 30, 1989 Balance Sheet $140,000.00
 September 30, 1987 Balance Sheet $90,-000.00"

9. Movant alleges that Debtor's prior financial statements valued the assets as follows:
 March 31, 1991 Balance Sheet..$1,361,750.00
 April 30, 1989 Balance Sheet..$2,084,550.00
 (Compl.¶ 37.d.)

10. Movant alleges that Debtor holds 25% of the shares of 1261 Corp, as opposed to 12.5%. (Compl.¶ 35.e.)

11. Debtor filed for relief on April 4, 1994 and the financial statements span 1987 to 1991. (*See supra* n. 8.)

12. The subpoena seeks documents and information from Brahver dating back to 1990, and the petition was filed in 1994. While § 727(a)(2)(A) only applies to property concealed or transferred within one year before the date of filing, § 727(a)(4) (false oaths) and § 727(a)(5) (failure to satisfactorily explain loss of assets) are not so constrained.

13. This proceeding consists of two causes of action under 11 U.S.C. §§ 523 and 727 which federal law provides the rule of decision:
 11 U.S.C. § 523: *See e.g. In re Bozzano*, 183 B.R. 735 (Bankr.M.D.N.C.1995) (dischargeability is uniquely a bankruptcy question and questions regrading dischargeability of debts are questions of federal bankruptcy law): *Matter of Gross*, 175 B.R. 277 (Bankr.N.D.Ind.1994); *compare Angus v. Wald (In re Wald )*, 208 B.R. 516 (Bankr. N.D.Ala.1997) (analysis of whether bankruptcy court should apply state or federal law in determination of whether state court default judgment should be given collateral estoppel effect in discharge proceeding).

privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501, made applicable in bankruptcy by Fed. R.Bank.P. 9017.[14]

 Brahver raises one of the two recognized marital privileges[15]—the anti-marital facts privilege (also known as the privilege against adverse spousal testimony)—but fails to justify its invocation in this case. The anti-marital facts privilege is limited to criminal matters "where one spouse is a party and the other spouse is called to testify." *United States v. Premises Known as 281 Syosset Woodbury Road, Woodbury New York*, 71 F.3d 1067, 1070 (2d Cir.1995) (court determining that the facts presented in civil forfeiture case did not warrant an expansion of the privilege). The privilege serves to protect "marital harmony" by allowing a witness to refuse to testify against his or her spouse in the criminal proceeding. *Id.*

 Brahver seeks to raise the privilege in this civil proceeding on the possibility that Shur may be exposed to criminal liability should the allegations in the complaint be proven. (Brahver Mem. Of Law dated 8/4/95 at 8–9.) The mere prospect of potential criminal liability is "is far too speculative to justify application of the privilege," *281 Syosset Woodbury Rd.*, 71 F.3d at 1071, and Brahver's bare assertion of seeking to avoid "a rift between the spouses" fails to set forth any basis on which to extend an often criticized privilege. *See e.g. United States v. Allery*, 526 F.2d 1362, 1365 (8th Cir.1975) ("criticism of the privilege for anti-marital facts as a mechanism for the suppression of truth and agitation for its abolition has been widespread among commentators") (Citations omitted).

The Supreme Court has stressed the need to strictly construe and narrowly apply the privilege. *Trammel v. United States*, 445 U.S. 40, 51–52, 100 S.Ct. 906, 912–13, 63 L.Ed.2d 186 (1980). The Trammel Court dispatched an archaic component of the privilege which allowed a spouse to unilaterally disqualify the other spouse from testifying— and modified the privilege so that only the witness-spouse could assert the privilege. In so holding, the Court observed that the privilege ran counter to the fundamental principle that "the public ... has a right to every man's evidence" and was unlike other privileges because its effect was to exclude evidence of criminal acts rather than protect private communications—the justification for the other modern recognized privileges. *Id.*

If Brahver were successful in asserting the privilege here, he might be the "safe and unquestionable" accomplice (capable of securing Shur's alleged inappropriate prepetition transfers) condemned in the Trammel decision. *See Trammel*, 445 U.S. at 52, 100 S.Ct. 906 (quoting Jeremy Bentham, 5 Rationale of Judicial Evidence 340 (1827) (discussing privilege's susceptibility to abuse)). The circumstances presented on this motion clearly dictates that the modern anti-marital facts privilege not reach as far as Brahver would have us hold.

*Conclusion*

Accordingly, except as noted below, Brahver's objections are overruled. This decision notwithstanding, the taking of Brahver's deposition will not resolve all disputes, so the parties should bear in mind that "[a]ll objections made at the time of the examination... shall be noted ... upon the record of the deposition; but the examination shall proceed, with the testimony being taken subject

---

11 U.S.C. § 727: Discharge is clearly a matter of federal law. *See Matter of Ciotta*, 4 B.R. 253, 255 (Bankr.E.D.N.Y.1980) ("the right to a discharge is statutory and should be construed liberally to in order to carry into effect the intent of Congress").

14. Rule 1101(a) of the Federal Rules of Evidence ("Fed. R. Evid.") states in relevant part that "these rules apply to ... United States bankruptcy judges .... in the actions, cases, and proceedings and to the extent hereinafter set forth."

Fed.R.Evid. 1101(c) states that rules of privilege are applicable "at all stages of all actions, cases, and proceedings."

15. The second privilege, the confidential communications privilege, was not raised in this case. (*See* Brahver's Resp. to Supplemental Mot. To Compel at ¶ 6.) The privilege applies in both civil and criminal cases to "conversations or communications with the other spouse made in confidence during their marriage." Weinstein's Federal Evid. § 505.03[1], p. 505–6 (1997).

to objections." Fed.R.Civ.P. 30(c) (applicable in Bankruptcy by Fed.R.Bankr.P. 7030). This Court "can always examine the deposition in camera and strike the matter from the record, or in the alternative not admit it into the evidence." *Bartlett Futures, Inc. v. Davis* (*In re Davis*), 109 B.R. 442, 444 (Bankr.D.Kan.1990).

The attorneys are directed to arrange for the production of documents set forth in requests 1, 2, 3 & 5 and make arrangements for the deposition to be held and concluded within forty-five days.

Plaintiff is directed to settle an order consistent with this decision within 15 days.